UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL ADAMS,

Plaintiff,

v.

DAHL, *et al.*,

Defendants.

Case No. 1:20-cv-00852-CDB (PC)

FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS (ECF No. 32)

FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER (ECF No. 26)

**FOURTEEN (14) DAY DEADLINE**

ORDER GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE (ECF No. 32-1)

Clerk of Court to assign a district judge.

## I. BACKGROUND

Plaintiff Paul Adams ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. This action proceeds on Plaintiff's claims against Defendants Dahl, Rios, and Kendrix raised in Plaintiff's first amended complaint ("FAC") for retaliation in violation of the First Amendment and deliberate indifference to his safety in violation of the Eighth Amendment. (ECF Nos. 7, 10–12.) The Court directed service of the FAC, and each Defendant waived service. (ECF Nos. 12, 15.) Defendants have not yet responded to the FAC.

On September 15, 2021, Plaintiff filed an emergency application for a temporary restraining order ("TRO") based on imminent danger of physical harm or death because of the dangerous environment created by Defendants. (ECF No. 26.) Defendants filed a response in opposition (ECF No. 34), and Plaintiff filed a reply, (ECF No. 37).

On November 22, 2021, Defendants filed a motion to revoke Plaintiff's *in forma pauperis* ("IFP") status because Plaintiff has at least three "strikes" under 28 U.S.C. § 1915(g) and did not allege he was in imminent danger at the time of filing the complaint. (ECF No. 32.) Defendants also requested that the Court take judicial notice of Plaintiff's prior cases. (*Id.*) Plaintiff filed a response in opposition. (ECF No. 38.)

Upon consideration of the allegations in the FAC, the Court finds that Plaintiff was under imminent danger of serious bodily harm at the time of filing the FAC. Therefore, the Court recommends that Defendants' motion to revoke Plaintiff's IFP status, (ECF No. 32), be denied. The Court further recommends that Plaintiff's motion for a temporary restraining order, (ECF No. 32), also be denied.

## II. THREE-STRIKES PROVISION OF 28 U.S.C. § 1915(g)

### A. Legal Standards

The objective of the Prison Litigation Reform Act ("PLRA") is to further "the congressional goal of reducing frivolous prisoner litigation in federal court." *Tierney v. Kupers*, 128 F.3d 1310, 1312 (9th Cir. 1997); *see Andrews v. Cervantes*, 493 F.3d 1047, 1052 (9th Cir. 2007). 28 U.S.C. § 1915 governs IFP proceedings. The PLRA was amended to include subsection 1915(g), a non-merits screening device that bars a prisoner with three or more "strikes" from proceeding IFP unless, at the time of filing the complaint, they were under imminent danger of serious physical injury. *Cervantes*, 493 F.3d at 1052. This subsection provides:

> In no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This is commonly referred to as the "three strikes" provision. *Andrews v.*

*King*, 398 F.3d 1113, 1116 n.1 (9th Cir. 2005).

Not all dismissed cases qualify as strikes under section 1915(g). *Id.* at 1121. In determining whether a case counts as a strike, "the reviewing court looks to the dismissing court's action and the reasons underlying it." *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013). Regardless of how a dismissal order is styled, a case counts as a strike if it was dismissed on the ground that it was frivolous, malicious, or failed to state a claim. *El-Shaddai v. Zamora*, 833 F.3d 1036, 1042 (9th Cir. 2016); *see Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1726, 207 L. Ed. 2d 132 (2020).

Even if a court previously granted Plaintiff leave to proceed IFP, the court may revoke IFP status, either on motion or *sua sponte*, at any time, upon a determination that IFP status should not have been granted. *E.g.*, *Sharp v. Bolin*, No. 1:21-cv-01549-NONE-SAB, 2022 WL 400821, at *1 (E.D. Cal. Jan. 25, 2022), *F. & R. adopted*, No. 1:21-cv-01549-JLT-SAB, 2022 WL 605410 (E.D. Cal. Mar. 1, 2022).

**B. Procedural History**

On June 22, 2020, Plaintiff filed a civil rights complaint and a motion to proceed IFP. (ECF Nos. 1, 2.) Approximately three months later, on September 16, 2020, and before the Court could screen the complaint, Plaintiff filed a motion to amend the complaint and lodged the FAC. (ECF Nos. 6, 7.) Shortly thereafter, the Court granted Plaintiff's IFP application. (ECF No. 9.)

On April 23, 2021, the Court issued an order granting Plaintiff's motion to amend the complaint and deemed the FAC the operative complaint for screening. (ECF No. 9.) The Court found that Plaintiff has more than three strikes under 28 U.S.C. § 1915(g). (*Id.*) The Court concluded:

> Upon review of Plaintiff's first amended complaint . . . , the Court finds that Plaintiff's allegations satisfy the imminent danger exception. According to Plaintiff, Defendants subject him to intimidation, retaliation, and ongoing threats of violence. Plaintiff's allegations, if true, are sufficient to allow Plaintiff to proceed *in forma pauperis* in this action as previously ordered.

(*Id.* at 2) (citing ECF Nos. 7–8).

By the instant motion to revoke Plaintiff's IFP status, Defendants argue the three strikes rule precludes Plaintiff from pursuing this action without prepayment of filing fees. (ECF No. 32 at 11–14.) Defendants contend the imminent danger exception does not apply because the allegations do not suggest Plaintiff was in imminent danger when he filed the original complaint on June 22, 2020. (*Id.* at 14–17.)

In response, Plaintiff argues the Court had correctly granted Plaintiff's IFP application based on the FAC, which was an "[a]ction deriving from the Original . . . complaint during the screening process" and the operative complaint in this matter. (ECF No. 38 at 2, 4.) Plaintiff argues both the original complaint and the FAC demonstrate that Defendant Dahl placed him in ongoing danger of physical injury or death by labeling him a "snitch," and Plaintiff was irreparably, physically harmed. (*Id.* at 4). Plaintiff requests the Court to stand on its previous ruling granting his IFP application. (ECF No. 38 at 4.)

**C. Strikes**

The Court may take judicial notice of court records. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Here, the Court takes judicial notice of the following cases filed by Plaintiff and dismissed for frivolousness or failure to state a claim, each of which counts as a strike:[1]

(1) *Adams v. Gottlie*b, Case No. 2:09-cv-03027-UA-PJW (C.D. Cal.) (dismissed on May 19, 2009, as frivolous and *Heck*-barred);

(2) *Adams v. Small*, Case No. 3:10-cv-01211-MMA-POR (S.D. Cal.) (dismissed on February 1, 2012, for failure to state a claim), *aff'd*, Case No. 12-55328 (9th Cir. Nov. 4, 2013);

(3) *Adams v. Raske*, Case No. 3:11-cv-00243-WQH-JMA (S.D. Cal.) (dismissed on August 13, 2013, as frivolous and for failure to state a claim); and

(4) *Adams v. Roe*, Case No. 5:14-cv-00607-SJO-PJW (C.D. Cal.) (dismissed on November 2, 2016, for failure to state a claim).

Additionally, courts have denied or revoked Plaintiff's IFP status in other cases: *Adams v.*

---

[1] Defendants' request for judicial notice, (ECF No. 32-1), is granted pursuant to Rule 201 of the Federal Rules of Evidence.

*Roe*, Case No. 16-56734, (ECF No. 23) (9th Cir. Oct. 5, 2018) (finding that plaintiff-appellant is subject to 28 U.S.C. § 1915(g) and revoking IFP status on appeal); *Adams v. Newsom*, No. 1:20-cv-00674-SAB (PC), 2020 WL 2561590 (E.D. Cal. May 20, 2020) (finding that plaintiff had incurred three or more strikes under section 1915(g) prior to filing this lawsuit), *F. & R. adopted*, No. 1:20-cv-00674-AWI-SAB (PC), 2020 WL 6020406; *Adams v. Newsome*, Case No. 1:19-1109-NONE-BAM (PC), (ECF No. 9) (E.D. Cal. Sept. 13, 2019) (finding that plaintiff was previously informed he was subject to section 1915(g) and does not satisfy the imminent danger exception), *F. & R. adopted*, (ECF No. 22) (E.D. Cal. Feb. 23, 2021); *Adams v. Cal. Dep't of Corr. & Rehab.*, No. CV 15-1067-SJO (C.D. Cal.) (finding that Plaintiff had at least three prior actions that were dismissed as frivolous or failing to state a claim), *aff'd*, 704 F. App'x 717, 718 (9th Cir. 2017).

Based on the foregoing, the Court again finds that Plaintiff had at least three strikes prior to filing this action.

**D. Imminent Danger**

Because Plaintiff has three strikes, he is precluded from proceeding IFP in this action unless, at the time of filing, he was in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). To meet this burden under section 1915(g), Plaintiff must provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). "[V]ague and utterly conclusory assertions" of imminent danger are insufficient. *Law v. Austin*, No. 2:17-cv-2060-JAM-AC, 2020 WL 373575, at *6 (E.D. Cal. Jan. 23, 2020) (quoting *White v. Colorado*, 157 F.3d 1226, 1231–32 (10th Cir. 1998)). The "imminent danger" exception is available where Plaintiff alleges serious physical injury that is "ready to take place" or "hanging threateningly over one's head." *Cervantes*, 493 F.3d at 1056 (quoting Merriam-Webster's Collegiate Dictionary 580 (10th ed. 1999)); *see Reberger v. Baker*, 657 F. App'x 681, 684 (9th Cir. 2016) ("[Plaintiff's] allegations . . . are too vague and speculative to invoke the exception to the three-strikes rule.").

On June 22, 2020, Plaintiff commenced this action by filing a civil rights complaint.

(*See* ECF No. 1.) In his complaint, Plaintiff stated that, while incarcerated at California Correctional Institution (Tehachapi) ("Tehachapi"), Plaintiff engaged in "jailhouse lawyer activities," such as filing complaints, grievances, and legal actions for himself and other inmates. (ECF No. 7 at 1, 3.)

Plaintiff alleges Defendant Dahl retaliated by stalking, harassing, and threatening Plaintiff, and Dahl created a dangerous environment by calling Plaintiff a "snitch" and a "piece of shit" in front of other prisoners. (*Id.* at 3, 4, 8, 9, 15, 16, 18, 21, 27.) However, as other courts have determined, threats and name-calling do not establish actual or impending harm to Plaintiff when he filed the complaint. *See, e.g.*, *Hammler v. Allison*, No. 1:21-cv-00122-AWI-GSA (PC), 2021 WL 353868, at *5–6 (E.D. Cal. Feb. 2, 2021) (allegations that "Defendants had labeled [the plaintiff] a 'snitch,' threatened him with physical injury, and caused other prisoners to threaten him with harm . . . fail[ed] to plausibly meet § 1915(g)'s exception for imminent danger"), *F. & R. adopted*, 2021 WL 859085 (E.D. Cal. Mar. 8, 2021); *Manago v. Cahow*, No. 5:20-cv-01220 MCS (KES), 2021 WL 621093, at *1 (C.D. Cal. Jan. 6, 2021) ("Defendants labeling many inmates, including Plaintiff, as snitches, "without facts establishing actual or pending harm [to Plaintiff], is merely speculative; it conveys neither an imminent nor proximate danger."); *see also Moten v. Sosa*, No. 2:17-cv-0068 JAM AC P, 2018 WL 571939, at *3 (E.D. Cal. Jan. 26, 2018) (finding claims that guard "labeled [plaintiff] a snitch-rat" and "exposed [him] to emotional, or physical harm from other prisoners," filed more than a year after the alleged incident failed to satisfy § 1915(g)'s exception for "imminent" or "proximate danger."), *appeal dismissed*, No. 18-16018, 2018 WL 6334995 (9th Cir. July 19, 2018), and *F. & R. adopted*, No. 2:17-cv-0068-JAM AC P, 2018 WL 5883933 (E.D. Cal. Nov. 9, 2018).

Before the Court could screen the original complaint, on September 16, 2020, Plaintiff filed an FAC adding claims of Eighth Amendment deliberate indifference, First Amendment retaliation, and civil battery based on events that allegedly occurred after he commenced this action. (ECF No. 7.) In the FAC, Plaintiff alleges that Dahl, Kendrix, J. King, and Hernandez[2] forced two other inmates to attack Plaintiff by threatening to take personal property away from

[2] Claims against King and Hernandez have been screened out. (ECF No. 10.)

all the inmates in the housing unit. (*Id.* at 6.) On August 22, 2020, Plaintiff was beaten by two inmates, resulting in physical, mental, and emotional harm, and he was threatened with more beatings by Defendants. (*Id.* at 6–8.)

Plaintiff argues that a determination of imminent danger should be based on the FAC and not the original complaint, since the original complaint was not screened and IFP was granted on the allegations in the FAC. In fact, in its order granting Plaintiff's motion for leave to file the FAC, the Court considered allegations of imminent danger set forth in the FAC as a basis for concluding Plaintiff was not subject to the section 1915(g) bar and reaffirming its earlier ruling that Plaintiff was entitled to proceed IFP. (ECF No. 9 at 2.)

In *Andrews v. Cervantes*, the Ninth Circuit held that "it is the circumstances at the time of the filing of the complaint that matters for purposes of the 'imminent danger' exception to § 1915(g)." 493 F.3d at 1053. However, the Ninth Circuit did not elaborate on whether it is the time of filing the original or the operative complaint that matters, and there is some disagreement among the district courts as to how *Cervantes* should be interpreted and a split among the Circuits on the issue.

Although the Ninth Circuit has not issued a published opinion on the issue, three unpublished panel decisions indicate that imminent danger for purposes of the section 1915(g) bar should be evaluated as of the time of the operative complaint, not the original complaint. *See Murrell v. Ryan*, 821 F. App'x 832, 833 (9th Cir. 2020) (affirming dismissal where plaintiff failed to allege he was under imminent danger of serious physical injury "at the time that he lodged the operative first amended complaint"); *Jonassen v. United States*, 671 F. App'x 668, 668 (9th Cir. 2016) (district court erred by revoking IFP status without first considering proposed amended complaint, which made plausible allegations that plaintiff was in imminent danger at the time amended complaint was lodged); *Saunders v. Cate*, 508 F. App'x 647, 648 (9th Cir. 2013) (district court improperly denied plaintiff's request to proceed IFP because proposed amended complaint made plausible allegations that plaintiff was in imminent danger at the time amended complaint was lodged). Similarly, the Eighth Circuit has found that imminent danger should be assessed at the time the operative complaint is filed. *See Burke v. St. Louis City Jails*,

603 F. App'x 525, 525–26 (8th Cir. 2015) (per curiam) ("[T]he District Court should have considered whether [the plaintiff] met the imminent-danger exception when he filed his amended complaint, not when he filed his original complaint.") (citing *Martin v. Shelton*, 319 F.3d 1048, 1051 (8th Cir. 2003)).

However, in one unpublished opinion of the Ninth Circuit, the panel affirmed a district court's holding that allegations of imminent danger in an amended complaint do not cure a plaintiff's failure to adequately allege danger in the original complaint. *Bontemps v. Godina*, 708 F. App'x 356 (9th Cir. 2017). In that case, the magistrate judge revoked IFP status because, "even if plaintiff's allegations in the FAC were sufficient to allege ongoing danger, they are irrelevant here. The allegations in the initial complaint are relevant, as the court needs to determine whether plaintiff was in imminent danger at the time he filed the initial complaint." *Bontempts v. Godina*, No. CV 15-3171-JFW (SP), 2016 WL 10933016, at * 5 (C.D. Cal. July 21, 2016).[3] The district court adopted the findings and recommendations, and the Ninth Circuit affirmed, holding, "Bontemps did not allege facts demonstrating that he faced imminent danger at the time he filed his complaint." *Bontempts v. Godina*, 2016 WL 10935211 (E.D. Cal. Aug. 25, 2016), *aff'd*, 708 F. App'x 356 (9th Cir. Dec. 21, 2017).[4]

In some cases, defendants have sought to revoke a plaintiff's IFP status where imminent danger properly was pleaded in the original complaint but later dissipated and was not pleaded in an amended complaint due to changed circumstances. In these situations, courts have held that the imminent danger analysis is limited to the pleadings at the commencement of the action and need not be reexamined when later, amended complaints are filed. *E.g.*, *Bradford v. Usher*, No. 1:17-cv-01128-DAD-SAB, 2019 WL 11526778, *3–4 (E.D. Cal. Sept. 12, 2019) ("imminent danger for purposes of § 1915(g) is to be measured at the time of the commencement of the

---

[3] The magistrate judge in *Bontempts* cited as authority the decision of Hon. U.S. Magistrate Judge Dennis Beck, who held in that case, "[t]he proper complaint to examine is not the amended complaint, but the original complaint." *McCoy v. Enenmoh*, No. 1:12–cv–00983 AWI DLB PC, 2014 WL 2524010, at *3 (E.D. Cal. June 4, 2014), *F. & R. adopted*, 2014 WL 3615621 (July 22, 2014).

[4] The Second Circuit likewise holds that the section 1915(g) bar attaches unless imminent danger is pleaded in the original complaint. *See Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (considering the plaintiff's initial and amended complaints and finding that no imminent danger existed "at the time [the plaintiff] filed his initial complaint").

action”); *Marino v. Gomez*, No. 2:21-cv-0572 JAM KJN P, 2021 WL 4988875, *3 (E.D. Cal. Oct. 27, 2021) (same), *F. & R. aff'd*, 2021 WL 6052166 (Dec. 21, 2021).

Those circumstances do not exist here. Plaintiff filed his original complaint and IFP application, followed by an amended complaint and motion seeking leave to file the amended complaint. Afterward, the assigned magistrate judge granted the IFP application, and then set forth in a subsequent order granting the motion to amend the complaint that the FAC sufficiently alleged imminent danger “to allow Plaintiff to proceed *in forma pauperis* in this action as previously ordered.” (ECF No. 9 at p. 2.)

This case is closer to *Ellington v. Alameida*, No. 2:04-cv-00666-RSL-JLW, 2010 WL 2650632, at *1 (E.D. Cal. July 1, 2010), *aff'd*, 2010 WL 11526778 (Aug. 26, 2010), *aff'd on other grounds sub nom*, *Ellington v. Runnels*, 479 F. App'x 762 (9th Cir. Jul 10, 2012). There, the Court dismissed the original complaint with leave to refile, in part because several of plaintiff's claims appeared to allege sufficient imminent danger to trigger the exception to the “three strikes” provision that would allow plaintiff to proceed IFP. *Id.* The Court delayed ruling on the IFP application until after the first amended complaint was filed. *Id.* Because that amended complaint, which became the operative pleading, properly alleged imminent danger, the Court granted IFP status. *Id.*

Likewise, in this case, the Court acknowledged in its order granting plaintiff leave to file a FAC that the imminent danger allegations in the FAC warranted the grant of IFP status. Consideration of those allegations when the action was first “commenced” (*i.e.*, prior to the screening of either the original complaint and operative FAC) is consistent with the Ninth Circuit's unpublished opinions in *Murrell*, *Jonassen*, and *Saunders*. *See supra*.

Accordingly, although Plaintiff is a “three-striker,” his FAC sufficiently alleges imminent danger that this Court can and did consider in concluding that the section 1915(g) bar does not attach in this case. Plaintiff's IFP status should not be revoked, and Defendants' motion, (ECF No. 32), should be DENIED.

///

///

## III. TEMPORARY RESTRAINING ORDER

### A. Background

Plaintiff's claims are based on allegations of events that occurred at Tehachapi. (*See* FAC, ECF No. 7.) On September 10, 2021, Plaintiff filed a notice of change of address advising of his transfer to Lancaster. (ECF No. 25.)

On September 15, 2021, Plaintiff filed the TRO currently pending before the Court. (ECF No. 26.) Defendants filed a response in opposition (ECF No. 34), and Plaintiff filed a reply (ECF No. 37.).

On December 9, 2021, Plaintiff filed a change of address to MCRP Program Amity, Los Angeles, California, where Plaintiff is currently housed. (ECF No. 35.)

### B. Legal Standards

Federal courts are courts of limited jurisdiction, and in considering a request for preliminary injunctive relief, the court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). If the court does not have an actual case or controversy before it, the court has no power to hear the matter in question. *Id.* A moot action is one where the issues are no longer alive or the parties lack a legally cognizable interest in the outcome. *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir. 1985) (citing *Lee v. Schmidt-Wenzel & Harter*, 766 F.2d 1387, 1389 (9th Cir. 1985)). The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional, remedial nature is designed to prevent irreparable loss of rights prior to judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

The court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. *Summers*, 555 U.S. at 491–93; *Mayfield*, 599 F.3d at 969. The courts do not have personal jurisdiction over nonparties or prison officials in general. *See Zepeda v. U.S. Immigration Svc.*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction

over the claim; it may not attempt to determine the rights of persons not before the court.”). Additionally, a TRO or preliminary injunction is only binding on the parties; the parties’ officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with those individuals. Fed. R. Civ. P. 65(d)(2)(A)–(C).

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. Fed. R. Civ. P. 65(a)–(b). The analysis for issuance of a TRO is “substantially identical” to the analysis for a preliminary injunction. *See Stuhlbarg Int’l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is “an extraordinary remedy” and may issue only if the movant establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; (4) that an injunction is in the public interest. *Glossip v. Gross*, 576 U.S. 863, 876–77 (2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The movant bears the burden of satisfying all four prongs. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A preliminary injunction will not issue if the movant merely shows irreparable harm is possible; a showing of likelihood is required. *Id.* at 1131. The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. *Caribbean Marine Serv. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

The injunctive relief requested must also relate to the claims brought in the complaint. *See Pac. Radiation Oncology, LLC v. Queen’s Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) (“When a Plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction.”). Absent a nexus between the injury claimed in the motion and the underlying complaint, the court lacks the authority to grant Plaintiff any relief. *Id.* at 636.

If an inmate seeks injunctive relief with respect to conditions of confinement, his release from custody or transfer to another prison renders the request for injunctive relief moot, unless there is a reasonable expectation of being transferred back or a probability that he will again be subjected to the prison conditions from which he seeks. *Rodriguez v. Moore*, No. 2:19-cv-

00226-MCE-DMC, 2019 WL 2284892, at *1 (E.D. Cal. May 29, 2019), *F. & R. adopted*, 2019 WL 3714510, at *1 (E.D. Cal. Aug. 7, 2019) (citations omitted); *Gilbert v. Fernald*, No. CV 20-1269-SVW (KS), 2021 WL 1537043, at *3 (C.D. Cal. Mar. 4, 2021), *R. & R. adopted*, No. CV 20-1269-SVW (KS), 2021 WL 3666175, at *1 (C.D. Cal. Aug. 17, 2021). Prisoners do not have a constitutional right to be placed in any particular prison or to avoid transfer to more adverse conditions of confinement. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Betterman v. Montana*, 136 S. Ct. 1609, 1617 n.9 (2016) ("[A] convicted defendant has no right to serve his sentence in the penal institution he prefers"). "The conviction has sufficiently extinguished the [prisoner's] liberty interest to empower the State to confine him in *any* of its prisons." *Meachum*, 427 U.S. at 224 (alteration in original). Additionally, transferring prisoners between institutions is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Id.* at 225.

### C. Plaintiff's Motion for Injunctive Relief

On September 15, 2021, Plaintiff filed an emergency application for a TRO supported by his declaration. (ECF No. 26.) By the time Plaintiff filed his application for a TRO, Plaintiff had already been transferred from Tehachapi to Lancaster. (*See* ECF No. 25.) Plaintiff argues:

> Plaintiff will suffer irreparable injury, as that he has suffered on August 22, 2020, wherein correctional officers caused Plaintiff to be harmed and created a dangerous environment . . . . The violative acts against Plaintiff already have taken place, and based upon his experience and knowledge, he can make an educated guess and or [sic] prediction that further injuries and danger is currently imminent.

(ECF No. 26 at 1.) According to Plaintiff, he was to be transferred to Lancaster at a minimum security facility, or a level one yard, but instead was transferred to a maximum security facility, or a level four yard. (*Id.* at 2.) Plaintiff asserts that level four was a dangerous environment where his enemies were housed, and prison officials ignored Plaintiff's pleas that he was in the wrong place and needed to be transferred to level one. (*Id.* at 3, 6–10.) Because of his conditions of confinement, Plaintiff suffered from post-traumatic stress disorder, stress, anxiety, and depression; he experienced mental and emotional pain and suffering; he constantly feared being harmed or killed; he was unable to sleep, eat, or drink water; and he did not leave his cell for his

own safety. (*Id.* at 8–9.) Plaintiff asserts that his "life hangs in the balance with no light at the end of the tunnel" and asks the Court to intervene and order his transfer to a level one minimum facility where he would be safer. (*Id.* at 9.)

By their response, Defendants argue the TRO should not issue because: (1) the Court lacks jurisdiction over individuals and events outside the scope of this action; (2) Plaintiff fails to meet the standards for preliminary injunctive relief; and (3) the request for injunctive relief is moot because Plaintiff has been transferred to the MCRP. (ECF No. 34.)

Plaintiff filed a reply acknowledging his transfer from the level four yard to a level one yard on October 1, 2021. (ECF No. 37 at 3.) However, the next day he and another inmate were attacked by two level four inmates placed in Plaintiff's level one housing unit. (*Id.* at 3–4.) An officer named Jordan, who previously worked with Dahl and Kendrix at Tehachapi, intervened in the altercation and pepper sprayed Plaintiff, then allegedly interfered with Plaintiff's legal proceedings. (*Id.* at 4.)

Plaintiff acknowledges he was transferred to MCRP on December 2, 2021, but he argues that his application for a TRO is not moot because MCRP is a CDCR facility. (*Id.* at 6.) Plaintiff argues that, so long as he remains in CDCR custody and control, "he will be subjected to harm by KENDRICK's [sic] fellow officers that participate anywhere in CDCR." (*Id.*) (alteration in original). Additionally, Plaintiff states he can be "sent back to State Prison from MCRP at any time CDCR deems proper," and his claims would be moot "only after full release from CDCR custody and parole and probation." (*Id.* at 6, 8.)

As to the *Winter* test, Plaintiff argues he is likely to succeed on the merits because Defendants have not challenged the veracity of the complaint. He claims he is likely to suffer irreparable harm as he has been attacked twice already as he predicted, and without discussion, the balancing of equities tips in his favor and an injunction is the public interest. (*Id.* at 6–7.)

**D. Discussion**

After careful consideration of Plaintiff's application and declaration, the Court is unable to order a TRO as requested. The only relief sought by Plaintiff's motion is transfer from

maximum security to minimum security housing at Lancaster, and the motion is unclear against whom he seeks injunctive relief:

> Plaintiff asks the Court to intervene and Order his [p]lacement in a LEVEL ONE MINIMUM FACILITY where he would be safer . . . . [T]he Court should also consider that the circumstances are suspecious [sic] and that to not issue the Restraining order will likely lead to Plaintiff's irreparable harm.

(ECF No. 26 at 9–10) (alteration in original). Liberally construing Plaintiff's motion and reply, Plaintiff appears to seek an order requiring CDCR or unnamed CDCR officials to transfer or release him from custody to protect him from criminal acts by other inmates or correctional officers. (*See id.* at 9; ECF No. 37.) However, the Court does not have jurisdiction over these non-parties, and any TRO or preliminary injunction would not be binding on them.

Moreover, CDCR officials have already provided the relief sought, first by placing him into minimum security housing at Lancaster and then by transferring him to MCRP, where Plaintiff's safety is not an issue. Plaintiff has not alleged any threats, mistreatment, or physical harm since his transfer to MCRP, and he makes no complaints about the conditions of his confinement at MCRP. The mere fact that MCRP is a CDCR facility does not demonstrate a probability Plaintiff would be subjected to the same dangerous conditions and harm he suffered at Tehachapi and Lancaster, nor has Plaintiff shown a reasonable expectation of being transferred back to those facilities. *See Preiser v. Newkirk*, 422 U.S. 395, 403 (1975). Plaintiff's broad allegations of future harm at any CDCR institution are too remote, speculative, and conclusory to support a request for injunctive relief. *See Caribbean Marine Serv. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Under these circumstances, Plaintiff's request for emergency injunctive relief against CDCR and unnamed prison officials must be denied as moot. *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been transferred and "he has demonstrated no reasonable expectation of returning to [the prison]"), *cited in Cervantes*, 493 F.3d at 1053 n.5; *Poindexter v. Lynch*, No. 2:21-cv-0760-AC P, 2022 WL 2181765, at *1 (E.D. Cal. June 16, 2022) (finding inmate housed at Kern Valley State Prison was not in imminent danger of harm

by defendants located at California State Prison – Sacramento), *F. & R. adopted*, No. 2:21-cv-00760-TLN-AC, 2022 WL 2918428 (E.D. Cal. July 25, 2022); *Gil v. Doe*, No. 1:18-cv-01039-DAD-BAM (PC), 2019 WL 3034821, at *9 (E.D. Cal. July 11, 2019) ("Plaintiff's subsequent transfer out of Corcoran rendered moot his prayer for injunctive relief."), *F. & R. adopted*, 2019 WL 5079543 (E.D. Cal. Oct. 10, 2019). Even if Plaintiff were able to demonstrate he remains in danger while in CDCR custody, he has failed to demonstrate any such danger is imminent and requires a TRO for his protection.[5]

**IV. CONCLUSION**

The Court concludes that, under 28 U.S.C. § 1915(g), Plaintiff may proceed *in forma pauperis* in this action, and Plaintiff has failed to demonstrate that a TRO or preliminary injunction should issue in this case.

Accordingly, it is HEREBY RECOMMENDED:

1. Plaintiff's emergency application for temporary restraining order (ECF No. 26) be DENIED; and

2. Defendants' motion to revoke Plaintiff's *in forma pauperis* status (ECF No. 32) be DENIED.

Additionally, it is HEREBY ORDERED that:

1. Defendants' request for judicial notice (ECF No. 32-1) is GRANTED; and

2. The Clerk of Court is DIRECTED to randomly assign a district judge to this action.

These findings and recommendations will be submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections

---

[5] To the extent that Plaintiff seeks release from CDCR custody, any challenges to the validity or length of confinement must be raised through habeas corpus proceedings. *See Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *x*, 411 U.S. at 488–90).

within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 4, 2022**

UNITED STATES MAGISTRATE JUDGE